**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 1, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

IVAN DANIEL COCA,

      Defendant-Appellant.

No. 16-2093

(D.C. No. 2:15-CR-4115-KG-1)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, Chief Judge, and **HARTZ**, and **BALDOCK**, Circuit Judges.

Defendant Ivan Coca, a previously convicted felon, entered a conditional plea of guilty to possessing a firearm in violation of 18 U.S.C. § 922(g). He now appeals the district court's order denying his motion to suppress evidence establishing such possession. Our jurisdiction arises under 28 U.S.C. § 1291. Per our standard practice in such situations, we view the evidence in a light most favorable to the Government, accept the district court's findings of fact unless they are clearly erroneous, and review de novo the ultimate question of reasonableness under the Fourth Amendment. *United States v. Lopez*, 849 F.3d 921, 925 (10th Cir. 2017).

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Applying these standards, we affirm.

I.

The facts as revealed during the suppression hearing are undisputed. On the afternoon of August 27, 2015, United States marshals received information that Richard Gutierrez, a known gang member, might be present at 1505 La Fonda Drive, Apartment 3811, in Las Cruces, a unit of the Buena Vista Apartments. Gutierrez was wanted for violating the terms of his federal supervision by failing to report. A federal warrant for his arrest was outstanding. Around 3:00 p.m., marshals conducting surveillance on Apartment 3811 witnessed a male subject exit the apartment. The subject, later identified as Defendant Coca, was wearing a baseball cap, white muscle shirt, and shorts. He was walking westbound across La Fonda Drive. Marshals radioed their observations to assisting officers in the vicinity. One of those officers was Cody Austin of the Las Cruces Gang Task Unit.

Officer Austin promptly spotted Defendant walking west along a drainage culvert running more or less perpendicular from La Fonda Drive to Stull Drive. Austin stopped his vehicle, got out, and yelled at Defendant, who was several yards away. Once Austin had Defendant's attention, Austin asked if they could speak. At that point, Defendant turned around and walked toward Austin. Austin then recognized Defendant with whom he had "past dealings." Rec. vol. II, at 16. After Austin radioed the marshals' service and assisting units to advise of the situation, he asked Defendant where he was coming from. Defendant told Austin he was coming

2

from the Telshor Manor Apartments. Those apartments were located on the other side of the freeway. Austin "called him out on it," and let Defendant know he believed he was lying. *Id.* Austin told Defendant that just moments prior he had been seen coming out of Buena Vista Apartment 3811. At that point, Austin asked Defendant "if he would have a seat for me."[1] *Id.* Defendant sat down in the grass alongside the culvert. Seconds after Defendant sat down, Las Cruces Officers Horatio Rivera, also a part of the Gang Task Unit, and Anthony Lucero, a part of the K-9 Unit, arrived on the scene. Meanwhile, Austin radioed dispatch to check for outstanding warrants against Defendant.

All three officers stood near Defendant while waiting for the dispatch report. Defendant remained seated. Austin was speaking with Defendant when he noticed in plain view a new tattoo, "CB," on Defendant's neck. Austin believed "CB" stood for Cruces Boys, a Las Cruces prison gang. With Defendant's cooperation, Officer Rivera photographed the tattoo per the common practice of the Gang Task Unit. After taking one or two photos while Defendant was seated, Rivera asked him to stand up for further photos. When Defendant did so, Austin spotted a handgun behind a folded T-shirt tucked in Defendant's waistband. *See* Government's Exh. 2. Austin knew Defendant was a convicted felon. He promptly seized the handgun

---

[1] Austin testified that in "all my contacts, either consensual or nonconsensual, I pose it in a question for them. I will ask them, 'can you do me a favor and have a seat?' Try to avoid any conflict." Rec. vol. II, at 17.

3

and placed Defendant under arrest.

## II.

In his motion to suppress, Defendant argued that Officer Austin had detained him in violation of the Fourth Amendment, and this unlawful detention led to discovery of the handgun. The Government responded that prior to Austin's discovery of the handgun, the entire encounter with Defendant was consensual. In the alternative, the Government posited that Austin had reasonable suspicion to detain Defendant once Defendant told him he was coming from the Telshor Manor rather than the Buena Vista Apartments. Following a suppression hearing, the district court ruled from the bench. The court first held the initial encounter between Austin and Defendant was consensual. Austin asked Defendant if they might speak and Defendant responded by turning around and approaching Austin. But, according to the court, the encounter was no longer consensual once Austin asked Defendant about his prior whereabouts and, unsatisfied with his response, requested Defendant to sit while dispatch ran a check for warrants:

> It was within a very short period of time, moments after they contacted one another on that grassy area that Officer Austin asked and Mr. Coca stated that he was coming from a location that Officer Austin construed to be false or inconsistent with the information Officer Austin had received from the other officers who were conducting surveillance.

> Now, at that point, I don't believe the encounter was consensual. I believe it did evolve into a nonconsensual encounter. Because based on that information that Mr. Coca provided to Officer Austin it was enough that Officer Austin could . . . determine to detain Mr. Coca. And had Mr. Coca requested to leave at that particular time, I don't believe he

4

would have been free to leave, and therefore, it was not consensual.

> I will find that Officer Austin had reasonable suspicion to detain Mr. Coca based on that response that Officer Austin construed to be misleading and inconsistent and false as to Mr. Coca's origin, or, in other words, where he was walking from, and it was after that point . . . that Officer Austin had reasonable suspicion to detain and investigate further.

Rec. vol. II, at 113–114.

A.

We recognize three sorts of police-citizen interactions: consensual encounters, investigative detentions, and arrests. A consensual encounter is not a seizure within the meaning of the Fourth Amendment and need not be supported by suspicion of criminal activity. In comparison, an investigative detention is an encounter during which a police officer stops and briefly detains a person for investigative purposes. Such detention constitutes a seizure under the Fourth Amendment and is lawful only if the officer has a reasonable suspicion supported by articulable facts, together with rational inferences to be drawn therefrom, that criminal activity may be afoot. Finally, an arrest is a Fourth Amendment seizure characterized by the intrusive or lengthy nature of the detention. Only probable cause will support an arrest. *See Morris v. Noe*, 672 F.3d 1185, 1191–92 (10th Cir. 2012).

"Reasonable suspicion is a particularized and *objective* basis for suspecting the person stopped of criminal activity." In other words, something more than an inchoate or unparticularized suspicion or hunch is necessary.

5

*United States v. Rodriquez*, 739 F.3d 481, 485 (10th Cir. 2013) (emphasis added). But the standard is not particularly demanding. The circumstances necessary to arouse reasonable suspicion fall "considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, 274 (2002).

B.

Assuming without deciding that Officer Austin seized Defendant when he asked him to sit down, we ask what a prudent officer cognizant of the facts and circumstances known to Austin could reasonably suspect.[2] *See Rodriguez*, 739 F.3d at 486. Austin knew the marshals were seeking to execute an arrest warrant on Gutierrez. Austin knew both Gutierrez and Defendant were likely gang members. Austin also knew the marshals suspected Gutierrez was inside Apartment 3811 and that just moments prior marshals had witnessed a man exiting the apartment, the description of whom fit Defendant. A reasonable inference from these facts is that Defendant may very well have known Gutierrez was wanted. Finally, Austin knew that Defendant's response to the question about his prior whereabouts was suspect. *See United States v. Treto-Haro*, 287 F.3d 1000, 1006 (10th Cir. 2002) (recognizing that even ambiguous behavior, susceptible to innocent interpretation, may give rise to a reasonable suspicion of criminality depending on the totality of the

---

[2] A person is seized for Fourth Amendment purposes when, considering all the surrounding circumstances, the police conduct "would have communicated to a reasonable person that the person was not free to . . . terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 439 (1991).

circumstances).

In this case, the totality of the circumstances coupled with N.M. Stat. Ann § 30-22-1.A. would have provided a prudent officer with the suspicion necessary to detain Defendant consistent with the Fourth Amendment. Section 30-22-1 addresses the obstruction of justice. Subsection A. defines obstructing an officer as "knowingly obstructing, resisting or opposing any officer of this state or any other duly authorized person serving or attempting to serve or execute any process or any rule or order of the courts of this state or any other judicial writ of process." Here, consistent with the Fourth Amendment's demands, a prudent officer could have reasonably *suspected* that when Defendant failed to acknowledge his apparent presence inside Apartment 3811, he was seeking to thwart the marshals and assisting units in their efforts to execute an arrest warrant and apprehend Gutierrez.

Because the district court properly concluded that Officer Austin had reasonable suspicion to detain Defendant before he saw the handgun in Defendant's waistband, its judgment is AFFIRMED.

Entered for the Court,

Bobby R. Baldock
United States Circuit Judge

7